(57 Misc. Rep. 10.)

### PEOPLE ex rel. LEHIGH VALLEY RY. CO. v. CITY OF BUFFALO.

### PEOPLE ex rel. BUFFALO CREEK R. CO. v. SAME.

(Supreme Court, Trial Term, Erie County. December 17, 1907.)

1. MUNICIPAL CORPORATION—PUBLIC IMPROVEMENTS—SHIP CANAL—CONTRACT —EXECUTION—TIME.

   A contract involving over $25,000 for the dredging of the Buffalo ship canal was drawn September 27, 1906, on which date it was signed and acknowledged by the contractor. The contractor's bond was executed on the same day, and the contract was approved by the corporation counsel on the following day by the comptroller on the 29th, and by the bureau of engineering on October 9, 1906. Immediately thereafter the contractor began the work, which was prosecuted under the inspection of the city's officers, though the contract was not signed by the commissioner of public works until July 6, 1907. An assessment roll taxing one-half of the cost of the work against property benefited was filed February 25, 1907, and confirmed July 2d following. *Held*, that the contract was prematurely entered into, in violation of Buffalo City Charter, § 408, providing that no contract for any improvement costing more than $500 shall be entered into until the assessment therefor shall have been made, confirmed, and delivered to the treasurer, and that such assessment was, therefore, subject to attack in a proper proceeding.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1065.]

2. SAME—REVIEW OF ASSESSMENT—CERTIORARI—PETITION—OBJECTIONS.

   Under Code Civ. Proc. § 2127, providing that a petition for certiorari "must show a proper case for" issuing the writ, a relator's petition to review a special assessment, alleging that it was illegal, incorrect, erroneous, and void, because it was not made in compliance with the statutes of the state, nor with the general provisions of law for the levy of assessments for improvements in the city of Buffalo, was insufficient to raise the objection that the contract for the improvement was prematurely entered into before the assessment was levied, in violation of Buffalo City Charter, § 408.

3. SAME—PUBLIC IMPROVEMENTS—ASSESSMENTS—BENEFITS.

   Where relators owned property on a private ship canal, which was connected with a public canal maintained by a city, relators' property was benefited by and assessable for the dredging and improvement of the city canal, though it had not been assessed for prior similar improvements.

4. SAME—FRONT-FOOT RULE.

   An assessment of property for canal improvement at a uniform rate per front foot was not objectionable, in the absence of proof that the benefits to relators' property were not as assessed.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1113–1116.]

   107 N.Y.S.—44

Certiorari by the people, on the relation of the Buffalo Creek Railroad Company, and by the people, on the relation of the Lehigh Valley Railroad Company, against the city of Buffalo, to review special assessments levied by such city to collect one-half of the expenses of dredging the city's ship canal. Writ dismissed.

Moot, Sprague, Brownell & Marcy, for Buffalo Creek R. Co.
Kenefick, Cooke & Mitchell, for Lehigh Valley Ry. Co.
Louis E. Desbecker and S. F. Moran, for city of Buffalo.

BROWN, J. Some years ago the city ship canal, extending from near the mouth of the Buffalo river southerly to the private canal of the Buffalo Creek Railroad Company, was dredged to the depth of 23 feet, and annually thereafter the city of Buffalo maintained that depth by dredging and removing the annual deposit of mud and silt therefrom, assessing the expense thereof, one-half upon the assessable property in the city at large and one-half by local assessment upon the properties benefited by such expenditure. No part of such local assessment, however, has heretofore been levied upon the properties of either of the relators herein. On May 7, 1906, the common council of the city of Buffalo, under the authority of the provisions of the charter empowering it to put and maintain in navigable condition the city ship canal, voted that it intended to order the dredging of the canal to the completed contract depth for the maintenance of its channel in accordance with plans and specifications which were then on file in the bureau of engineering. On June 11, 1906, the commissioner of public works reported to the common council that the lowest bid received by him for the doing of the work was that of the Buffalo Dredging Company, at 29½ cents per cubic yard. On July 30, 1906, the common council directed the commissioner of public works to contract with the Buffalo Dredging Company for doing such work at that price; and on said July 30, 1906, the same body ordered the board of assessors to spread a local assessment of $12,500, being one-half of contract price of such work, upon the real estate benefited by such improvement in proportion to the benefits resulting therefrom. In pursuance of such authority the board of assessors prepared an assessment roll in which the property of the relator the Buffalo Creek Railroad Company was assessed at the sum of $1,114.-33, and the property of the relator the Lehigh Valley Railway Company was assessed at the sum of $1,952.14. The properties of the relators upon which such assessments were levied abut on a private ship canal constructed and operated by them, being about 5,000 feet long and connecting with the southern end of the city ship canal, of approximately of the same width and depth. These abutting properties are now and for many years have been used and occupied by the relators for commercial and transportation purposes by railroad, dock, and storage facilities; access thereto by lake vessels and other craft from the Great Lakes and the Buffalo harbor being solely had through the water way of the city known as the "city ship canal." This assessment roll was on February 25, 1907, filed in the office of the city clerk. The relators objected to their assessments. The

common council duly confirmed the same.   On July 2, 1907, it was
delivered to the comptroller, who gave it the number of 12,568, and
within the proper time the relators instituted these proceedings to
test its validity.   The writs of certiorari were issued upon the peti-
tions of the relators, in each of which it is alleged:

"That said assessments are illegal, incorrect, erroneous, and void, for the
reason that they were not made   *   *   *   in compliance with the statutes of
the state of New York, nor in compliance with the general or special provi-
sions of law for the levying of assessments for required improvements in the
city of Buffalo."

It is also alleged that the assessments are illegal because the prop-
erties of the relators are assessed at greater sums than the benefits
received, that the assessments are unequal, and that a large amount
of property benefited by said improvement has been omitted from
the assessment roll.   The return of the defendant denies these allega-
tions, and alleges that the assessments are valid and legal.

The issues thus raised were brought on for trial at the Erie Septem-
ber Equity Term; trial being commenced on October 31, 1907, and caus-
es submitted on November 26, 1907.   At the commencement of the trial
counsel for the defendant moved to dismiss the writs upon the ground
that the petitions do not allege that assessment roll is void for the
reason that the contract to do the work of dredging was entered
into before the roll was confirmed, and that, if the relators rely upon
that ground for alleging the invalidity of the roll, the court had no
jurisdiction to issue the writs, and the trial court had no jurisdiction
to try the validity of the rolls upon such an alleged reason.   The
relators then introduced evidence tending to establish that the con-
tract between the Buffalo Dredging Company and commissioner of
public works was entered into on the 27th day of September, 1906;
that in pursuance of that contract the dredging company actually did
the work shortly thereafter, which was inspected and supervised by
the city authorities, and all work was completed under the contract
before the assessments complained of were made and confirmed by the
common council on July 2, 1907.   These facts were claimed by the
relators to be admissible under the allegations of their petitions above
quoted, and that they establish the illegality of the assessments for
the reason that it is provided by section 408 of defendant's charter
that no contract for any improvement costing more than $500 shall
be entered into until the assessment therefor shall have been made,
confirmed, and rolls delivered to the treasurer.   The receipt of these
facts in evidence was objected to by the defendant upon the ground
that the petitions did not allege that the assessments were illegal for
any such reason, that no grounds of invalidity were set forth in the
petition, and particularly that it is not averred in the petition that the
assessment roll is void for the reason that the contract was entered
into before the roll was confirmed.   The evidence relative to making
the contract before assessments were levied was received upon the
statement of the court that the ruling upon its admissibility would be
disposed of upon the submission of the case.

While it is true that the commissioner of public works did not in

fact sign the contract until July 6, 1907, the fact is that the contract was drawn and dated on September 27, 1906, signed and acknowledged by the dredging company on that date, the bond of the dredging company for faithful performance of the work was executed September 27, 1906, contract was approved by the corporation counsel of the defendant on September 28, 1906, approved by the comptroller of the defendant on September 29, 1906, and also approved by the bureau of engineering of the defendant on October 9, 1906, by the deputy engineer, commissioner, and by the assistant engineer, and immediately thereafter the dredging company began the work of such dredging, and such work was prosecuted under the inspection of the proper officers of the defendant and in accordance with plans and specifications prepared by the bureau of engineering. If such facts constitute "the entering into a contract" in September, 1906, it is certainly established that the contract was made in violation of section 408 of the defendant's charter, in which case the assessments are illegal, for the charter specifically forbids entering into such a contract until after the assessments upon property benefited by such work are completed, confirmed, and delivered to the treasurer.

It is idle to argue that this section does not mean precisely what it says. Under this statute, for it is the act of the Legislature, the city of Buffalo cannot levy a local assessment to pay expense of making an improvement in the water ways of the city upon property benefited by any improvement costing more than $500 unless such assessment is made, confirmed, and delivered to the treasurer before the city becomes bound by contract to do the work or to pay for the same. There is not a suggestion or word in any of the statutes relative to the Buffalo river improvements to which my attention has been called that relieves an assessment levied to pay one-half of the contract price of the expense of dredging or maintaining the navigable depth of the water ways of the defendant from the fatal objection that the contract was made before such an assessment was levied, confirmed, and delivered to the treasurer, if such should be the fact. Chapter 566, p. 1356, of the Laws of 1902, provides for a local assessment to pay bonds of the city of Buffalo. Section 408 of the city charter does not apply to such an assessment. Chapter 527, p. 1439, of the Laws of 1906, provides for a local assessment to pay a portion of the expense of making the improvements therein specified. Section 408 of the city charter does apply to such an assessment. I have been referred to no statute providing for an assessment to pay the expense of dredging the city ship canal that dispenses with a compliance of the procedure specified in section 408 of the city charter. An assessment to pay expense of any improvement costing more than $500, made after a contract therefor has been entered into, would undoubtedly be illegal, and could successfully be defeated by proper proceedings.

If such an objection had been properly made by the relators in these proceedings, these assessments and this assessment roll must necessarily have been held to be void, with the result that the entire sum would be chargeable to the general fund. The relators now seek

to avail themselves of this objection under the averment in their petitions that the assessment is void for the reason that it is not made "in compliance with the general or special provisions of law for the levying" of such assessment. Such allegation is ineffective to raise the objection urged. To entitle the relators to the writs of certiorari to review the assessments and urge their illegality for the reasons here presented, their petitions "must show a proper case for the issuing of the writ." Section 2127, Code of Civil Procedure. The petition is the relators' pleading. It is their complaint. It must show the reasons why the assessment is illegal. To say that it is illegal for the reason that it does not comply with the law does not state any reason at all. What law has been violated, and in what way or manner does the assessment fail to comply with it, should have been stated. To allege that the assessment is illegal for the reason that it does not comply with the law does not "show a proper case for the issuing of the writ." Some fact or reason must be stated with such certainty that, if such fact be true, a judgment by default could be rendered adjudicating the actual existence of the fact as stated. If the relators' petition alleged that the assessments were void for the reason that such assessment was not made before the contract for the work was entered into, a fact would be stated and a reason given showing that assessment was void under section 408 of the defendant's charter. Such an allegation having been omitted from relators' petitions, it clearly appears that the writs were not issued on that ground, and the evidence relative to entering into the contract with the Buffalo Dredging Company before assessments were levied, confirmed, and delivered to the treasurer was inadmissible, should not have been received, and the same is stricken from the record.

The allegation of the petitions that the assessment roll is void because the assessments are unequal, or that the properties of the relators are assessed at greater sums than the benefits received, and that properties benefited by the improvements had not been assessed, have not been established upon the trial. It very clearly appears that the only means the relators have of reaching their properties with deep-water craft is through the city ship canal. The board of assessors determined that the properties of relators were benefited by maintaining the depth of the city ship canal at the contract depth of 23 feet, and no satisfactory evidence has been offered showing that the board of assessors erred in making such determination. The fact that such assessment had not been made upon relators' properties for annual dredging prior to 1906 is not a valid, legal objection to the assessments for 1906 dredging. While it is true that assessment rolls show on their face that relators' properties on their private canals were assessed at a uniform rate per foot canal front, yet it does not appear that the benefits to relators' properties are not precisely as assessed. It clearly appears that every foot of relators' properties has the same equal advantage of and privilege for shipping and commercial purposes, and that the benefits derived by the use of the city ship canal are identical and uniform. None of the reasons

for which the court condemn the per foot front assessment rule have been established.

For these reasons, the writs issued at the instance of the relators must be dismissed, with costs to the defendant; and judgment is accordingly ordered.

Let findings be prepared.